[959 NE2d 460, 935 NYS2d 523]

NEW YORK COALITION FOR QUALITY ASSISTED LIVING, INC., Appellant, v MFY LEGAL SERVICES, INC., et al., Respondents.

Argued September 6, 2011; decided October 20, 2011

### APPEARANCES OF COUNSEL

*O'Connell & Aronowitz*, Albany (*Jane Bello Burke, Jeffrey J. Sherrin* and *Aaron Mensh* of counsel), for appellant.

*Dewey & LeBoeuf LLP*, New York City (*John M. Aerni* and *Richard Caplan* of counsel), and *Debvoise & Plimpton LLP* (*Maura K. Monaghan, Maria C. Rivera, Amanda D. Zakowich* and *Nicholas C. Tompkins* of counsel) for respondents.

*Wilmer Cutler Pickering Hale & Dorr LLP*, New York City (*Michael G. Bongiorno, David F. Olsky* and *Adriel I. Cepeda Derieux* of counsel), for Disability Advocates, Inc. and another, amici curiae.

*Greenberg Traurig, LLP*, New York City (*William Wargo* and *Alan Mansfield* of counsel), for Center for Constitutional Rights and others, amici curiae.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed, without costs.

Plaintiff New York Coalition for Quality Assisted Living, Inc. (NYCQAL) is a not-for-profit association of members who operate adult homes and assisted living facilities that are regulated pursuant to 18 NYCRR parts 485 through 487. As relevant here, 18 NYCRR 485.14 governs visitor access to adult-care facilities, including access by defendants MFY Legal Services, Inc. (MFY) and Coalition of Institutionalized Aged and Disabled, Inc. (CIAD), which provide legal and advocacy services, respectively, to adult home residents. MFY and CIAD are registered with the Department of Health (DOH) pursuant to 18 NYCRR 485.14 (j).

NYCQAL, claiming that MFY and CIAD members routinely ran afoul of the state visitor access regulations, drafted proposed access guidelines to "clarify" NYCQAL procedures in allowing visitor access. After receiving suggestions from representatives from the Department of Health and the New York State Commission on Quality of Care and Advocacy for Persons with Disabilities, NYCQAL finalized its own access guidelines. Among other things, these guidelines call for facility representatives to operate as intermediaries between resident advocates and residents, prohibit advocates from accessing the facility unless

their purpose is to visit a particular resident, and permit NYC-QAL members to restrict access for those who, in their view, fail to comply with the guidelines.

Asserting that MFY and CIAD representatives were refusing to abide by NYCQAL guidelines, NYCQAL commenced this action seeking a judgment declaring, among other things, that its guidelines were enforceable and enjoining MFY and CIAD from violating such guidelines. MFY and CIAD moved to dismiss the complaint for failure to state a cause of action and for a declaration that the access guidelines are illegal and unenforceable. NYCQAL then moved for summary judgment.

Supreme Court granted NYCQAL's motion, declared the guidelines enforceable and enjoined MFY and CIAD from violating them (2009 NY Slip Op 31953[U] [2009]). It held that NYC-QAL's guidelines supplemented, rather than supplanted, 18 NYCRR 485.14. The Appellate Division reversed, granted MFY's and CIAD's motion and declared the guidelines unenforceable, holding that they conflicted with 18 NYCRR 485.14 (70 AD3d 568 [2010]). This Court granted leave and we now affirm.

The Appellate Division properly concluded that the guidelines impermissibly restrict advocate access to facility residents and violate 18 NYCRR 485.14 and the DOH's interpretation of that regulation. The DOH explained in a December 2003 letter to Administrators that although advocates must sign a visitor's log or similar record identifying themselves and their affiliation, they need not state the purpose of the visit or the residents they intend to see. Thus, the Appellate Division had a sound basis for concluding that the guidelines, which call for facility representatives to serve as intermediaries between advocates and the residents and prohibit advocates from walking through the facility without the intention of visiting with a particular resident, conflict with the regulations and the DOH's interpretation of them.

Likewise, the Appellate Division properly concluded that the guideline providing that a visitor's failure to comply with any of the guidelines would "constitute reasonable cause to restrict access" (guidelines § D [4]) conflicts with 18 NYCRR 485.14 (g). That regulation states that the "operator may restrict or prohibit access to the facility or interfere with confidential visits with residents by individuals who the operator has reasonable cause to believe would directly endanger the safety of [its] residents." It cannot reasonably be argued that every violation of NYCQAL's guidelines, no matter how tangential such

violations may be to the safety of residents of NYCQAL facilities, would "directly endanger" the safety of those residents.

Smith, J. (dissenting). The guidelines plaintiff has adopted do not seem to me inconsistent with a fair reading of the relevant Department of Health regulation, 18 NYCRR 485.14. Apparently, the Department saw no inconsistency either: It reviewed and commented on the guidelines before they took effect, and did not raise the objections that defendants raise. While those objections are based on legitimate concerns, plaintiff's members have legitimate concerns also, and the balance to be struck between the two should be decided by the Department, not by the courts.

The governing statute, Social Services Law § 461-a (3) (b) (ii) and (iii), says that the assisted living facilities that make up plaintiff's membership shall not "restrict or prohibit the access to the facility nor interfere with . . . confidential visits with residents" by advocacy organizations like defendants. 18 NYCRR 485.14 implements the statute, saying that a facility operator "shall not restrict or prohibit access to the facility" by such organizations (18 NYCRR 485.14 [a] [2], [3]), specifying hours in which access must be permitted (18 NYCRR 485.14 [b]), authorizing operators to require visitors to sign in (18 NYCRR 485.14 [c]), protecting the rights of residents against unwanted intrusion by visitors (18 NYCRR 485.14 [e], [f]) and permitting operators to restrict or prohibit access "by individuals who the operator has reasonable cause to believe would directly endanger the safety of such residents" (18 NYCRR 485.14 [g]). Neither the statute nor the regulation, however, can be read to mean that literally all limitations on access not expressly permitted by the text are forbidden. Obviously, the operators can impose some reasonable limitations—requiring visitors to enter by certain doors, to behave in an orderly manner, to stay away from rooms where confidential records are kept and so forth. This dispute concerns whether the particular limitations that plaintiff's guidelines impose are permissible.

The main substantive differences between the parties, as far as I can tell, boil down to these: defendants want to visit without disclosing to the operator's employees which residents they are visiting; to go directly to a resident's room, without first having an employee announce them and ask whether the visit is welcome; and to enter a facility without having a particular resident in mind, to find out if there are some who want to talk to them. Plaintiff's members do not want defendants to do these things.

I can see both sides of the argument. I appreciate the need to protect vulnerable people from abuse by an operator who may be more interested in saving money than in providing good care; but I can also understand that the activities of patient advocates with a strong sense of their mission could be burdensome and disruptive. More specifically, I see the point of allowing advocates to visit without disclosing who their clients are, but I doubt whether that is really possible in a residential care facility; I am prepared to believe that some residents will be better served if an advocate is allowed to come in unannounced, but I can also believe that some residents will be annoyed and made uncomfortable when that happens; and I see obvious advantages and disadvantages to allowing advocates to walk through a facility looking for potential clients.

I think we should let the Department sort these complicated problems out. If the Department wants to enact regulations that would explicitly give defendants and similar organizations the kind of access they are asking for, the statute seems broad enough to authorize it. But the Department has adopted no such regulations, and it evidently does not read the regulations it has adopted as prohibiting what plaintiff has done. Plaintiff sent these guidelines to the Department in draft form, and a Department official went through them line by line, without raising the objections defendants are raising. This evidence of the Department's interpretation of its own regulations seems much more persuasive to me than two seemingly contradictory letters—one favorable to plaintiff's position, one to defendants'—issued by the Department several years ago, on the same general subject.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, PIGOTT and JONES concur; Judge SMITH dissents in an opinion in which Judge READ concurs.

Order affirmed, without costs, in a memorandum.